Owen F. Duffy, Esq.
Attorney for Petitioner,
*Probulk Carriers Limited*
5 Penn Plaza, 19th Floor
New York, New York 10001
Tel: (516) 721-8793
Fax: (212) 235-7022
Email: Owen@ODuffy-Law.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

| | | |
|---|---|---|
| PROBULK CARRIERS LIMITED, | : | |
| | : | **Case No.: 17-civ- 00058** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| LEVENT KARACELIK, | : | **COMPLAINT** |
| EREGLI SHIPPING COMPANY and | : | |
| EREGLI DENIZCILIK A.S. | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------x

Plaintiff Probulk Carriers Limited (hereinafter "Probulk"), by its attorney,

Owen F. Duffy, as and for its Complaint against Defendants Levent Karacelik, Eregli

Shipping Company and Eregli Denizcilik A.S., alleges upon information and belief as

follows:

## INTRODUCTION

Probulk seeks to enforce the judicial confirmation of an arbitral award, which

Probulk obtained against Marvel International Management and Transportation

(hereinafter "Marvel") in this Court, against Defendants Levent Karacelik, Eregli

Shipping Company and Eregli Denizcilik A.S. on the basis that Marvel is the alter ego of the Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S.

## THE PARTIES

1.      At all material times, the Plaintiff Probulk is a business entity organized and existing under the laws of Liberia.

2.      The Plaintiff Probulk is registered to do business in the State of New York as a foreign business corporation, and the Petitioner Probulk maintains its principal place of business in the State of New York with an office at 1215 Fifth Avenue. Suite 4A, New York, New York, 10029.

3.      The Plaintiff Probulk is engaged in the business of international shipping, operating and sub-chartering time-chartered vessels to carry cargo in international trade.

4.      Marvel was a business entity organized and existing under the laws of a foreign country, and it also known as Marvel Uluslararasi Isletmecilik ve Tasimacilik Limited Sirketia, which is Turkish for Marvel International Management and Transportation.

5.      Marvel maintained its principal place of business in Turkey with an office at Aralik No. 3, Sulun Sokak 11, Levent Mah, Besiktas, 34330, Istanbul, Turkey.

6.      Marvel was engaged in the business of international shipping, chartering and operating oceangoing vessels to carry cargo in international trade.

7.     The Defendant Levent Karacelik is an individual, who is a citizen of Turkey and resident of Istanbul, Turkey.

8.     The Defendant Levent Karacelik was the founder, the owner and the chief executive officer of Marvel.

9.     The Defendant Levent Karacelik is also the principal shareholder, a vice-chairman and the daily manager of the Defendants Eregli Denizcelik A.S. and Ergeli Shipping company.

10.     The Defendant Eregli Denizcelik A.S. is a business entity organized and existing under the laws of a foreign country, and it maintains its principal place of business in Turkey with an office at Eksi Is Merkezi, Ord Prof Fahrettin Kerim Gokay Caddesi 12/3, Altunizade Mah, Uskudar, 34662, Istanbul, Turkey.

11.     The Defendant Eregli Denizcelik A.S. is a shipping company that provides technical and commercial management services to ship owners.

12.     The Defendant Eregli Shipping Company is a business entity organized and existing under the laws of a foreign country, and it maintains its principal place of business in Turkey with an office at Eksi Is Merkezi, Ord Prof Fahrettin Kerim Gokay Caddesi 12/3, Altunizade Mah, Uskudar, 34662, Istanbul, Turkey.

13.     The Defendant Eregli Shipping Company is a shipping company that owns and operates ocean going bulk carrier vessels that carry cargo in international trade.

14.     The Defendant Eregli Shipping Company is the registered owner of the M.V. CAPE ISTANBUL (identified by IMO number: 9446908), and the Defendant

Eregli Denizcelik A.S. is the technical and commercial manager of the M.V. CAPE
ISTANBUL.

## JURISDICTION AND VENUE

15.     The district court has original jurisdiction for this civil matter
pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value
of $75,000.00, exclusive of interest and costs, and is between a citizen of the State of
New York and citizens or subjects of a foreign state.

16.     Venue is proper in this District pursuant to 9 U.S.C. § 204 because,
save for the underlying arbitration agreement, an action or proceeding with respect
to the controversy between the parties could have been brought in this District.

## THE BACKGROUND FACTS

### PROBULK CHARTERED ITS VESSEL, THE M.V. IOANTHI, TO MARVEL IN 2008

17.     By a Time Charter Party dated May 7, 2008 (the "Charter Party"),
Probulk and Marvel entered into a contract, whereby Probulk agreed to let its time-
charted motor vessel, the M.V. IOANTHI, to Marvel in exchange for payments of hire.

18.     The Charter Party dated May 7, 2008 is a maritime contract.

19.     Pursuant to the Charter Party contract dated May 7, 2008, Marvel
agreed to hire the M.V. IOANTHI for a period starting between December 31, 2008
and March 15, 2009 and lasting up to earliest January 15, 2010 and latest February
28, 2010.

20.     In February of 2009, Marvel indicated that it would be unable to take delivery of the M.V. IOANTHI in accordance with the terms and conditions of the Charter Party contract dated May 7, 2008.

*MARVEL REPUDIATED THE CHARTER PARTY IN 2009*

21.     On or about February 27, 2009, Marvel repudiated the Charter Party, when it refused to take delivery of the M.V. IOANTHI in breach of the terms and conditions of the Charter Party contract dated May 7, 2008.

*PROBULK OBTAINED AN ARBITRATION AWARD AGAINST MARVEL IN 2013*

22.     The Charter Party provided that, should any dispute arise between the Owners (Probulk) and Charterers (Marvel), the matter in dispute shall be referred to arbitration in London, with English law and the terms of the London Maritime Arbitrators Association to apply.

23.     The Plaintiff Probulk initiated arbitration proceedings against Marvel, alleging repudiation or renunciation of the Charter Party and seeking an award of damages caused by Marvel's breach of the Charter Party.

24.     The dispute between Plaintiff Probulk and Marvel was arbitrated in London, in accordance with the terms and conditions of the Charter Party, and the London Arbitration Panel issued a Final Arbitration Award in favor of the Petitioner Probulk on January 28, 2013 (hereinafter, the "Arbitration Award").

25.     Pursuant to the Arbitration Award, Marvel was directed to pay Probulk:

- The sum of $8,860,293.50;

- Interest on the sum of $8,860,293.50 at the rate of 5% per annum and pro rata compounded at three-monthly rests from August 15, 2009 until the date of payment;
- Petitioner Probulk's costs of the arbitration, with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests from January 28, 2013; and,
- The costs of the Award in the event that those costs were not paid by Marvel in the first instance.

26.     On March 6, 2013, the London Arbitration Tribunal issued a Supplementary Award to correct an omission in the Final Arbitration Award, by which the London Arbitration Tribunal now awarded and directed:

> "that the charterers shall pay to the owners the sum of $9,496,481.00 (Nine million four hundred and ninety-six thousand four hundred and eighty-one United States Dollars) together with interest thereon at the rate of 5% per annum and pro rata at three-monthly rests from 15 August 2009 until the date of payment."

27.     Based on the damages awarded in the Arbitration, the amount of the judgment for the award (originally, $9,496,481.00) on the merits of the case, including interest from 15 August 2009 through 15 February 2016 ($3,298,612.65), is currently the sum of $12,795,093.65.

28.     The costs of the London Arbitration were never agreed to between the Petitioner and the Respondent, and the arbitration tribunal never determined the costs of the London.

29.     The Plaintiff Probulk demanded that Marvel promptly remit the sums due under the Arbitration Award, but Marvel failed to make any payment in satisfaction of the Arbitration Award.

***PROBULK OBTAINED A DEFAULT JUDGMENT AGAINST MARVEL IN THIS COURT IN 2016***

30.     On October 17, 2014, Probulk initiated an action in this Court to confirm the Arbitration Award dated January 28, 2013 and the Supplementary Arbitration Award dated March 6, 2013.

31.     The action to confirm the Arbitration Award was styled as: Probulk Carriers Limited v. Marvel International Management and Transportation, Civil Case # 1:14-cv-08338-LAK.

32.     The Petition to confirm the Arbitration Award was served on Marvel's registered agent in New York City, but Marvel did not appear to contest confirmation of the Arbitration Award.

33.     On February 10, 2016, the Clerk of the Court issued a Certificate of Default against Marvel.

34.     On February 16, 2016, Probulk filed a Motion for a Default Judgment against Marvel and, again, the Motion was served on Marvel's registered agent in New York City, but Marvel did not appear to contest the Motion.

35.     On April 12, 2016 The Honorable Lewis A. Kaplan, U.S.D.J., issued an Order granting Probulk's Motion for a Default Judgment against Marvel, which ordered Marvel to pay the sum of $12,795,09365, plus interest and costs to satisfy the Foreign Arbitral Award dated January 28, 2013 and the Supplemental Award dated March 6, 2013. *See*, Probulk Carriers Limited v. Marvel International Management and Transportation, S.D.N.Y. Civil Case # 1:14-cv-08338-LAK, at Docket Entry number 22.

36.     The action against Marvel was terminated on April 12, 2016.

*Marvel did not satisfy the Judgment*

37.     The Plaintiff Probulk demanded that Marvel promptly remit the sums due under the Default Judgment, but Marvel has failed to make any payment in satisfaction of the Default Judgment.

### THE FACTS SUPPORTING THE CLAIMS AGAINST DEFENDANTS LEVENT KARACELIK, EREGLI SHIPPING COMPANY AND EREGLI DENIZCILIK A.S.

38.     Notwithstanding any formal separate incorporations of Marvel and the Defendants Eregli Shipping Company and Eregli Denizcilik A.S., the corporate Defendants were and still are a single business enterprise whose ownership and control is vested entirely with Defendant Levent Karacelik such that any distinction between any one of them and Marvel, for the purposes of the judgment rendered against Marvel, is illusory.

39.     The Defendant Levent Karacelik was the founder, the chief executive officer and the principal owner of Marvel.

40.     In addition to Marvel, the Defendant Levent Karacelik owned, controlled and operated a number of other companies under the umbrella of "The Marvel Group," which include, but are not limited to: Marvel International Managing and Transportation Ltd.; Marvel USA; Marvel Consultancy Co, Hedes; Lion Shiphilding; Megafoam Crossline Technologies; Mel Cobntructiones Ltf.; Karden Shipping Agency, Inc.; Koza Chartering, Inc.; Marvel Consultancy, Inc.; Marvel Shanghai/China; Top Construction, Inc.; Toglam Shipping; Euroteam International; Eregli Shipping Company and Eregli Denizcilik A.S.

41.     There was an overlap in ownership, officers, directors and personnel for all of the companies controlled by the Defendant Levent Karacelik under the umbrella of "The Marvel Group."

42.     Notwithstanding the fact that the companies referred to in ¶ 41 had officers and managers, all the operations and the activities of the companies referred to in ¶ 41 were subject to the Defendant Levent Karacelik's agreement and approval and the Defendant Levent Karacelik exercised complete authority over all of these companies such that none of them had any degree of business discretion other than that provided by the Defendant Levent Karacelik.

43.     All of the operations of the various Marvel companies were run out of the Defendant Levent Karacelik's office, and there was nothing going on without the Defendant Levent Karacelik saying yes or no.

44.     On occasion, the Defendant Levent Karacelik directed that all of the Marvel companies were to guarantee the obligations of a specific Marvel company that was controlled by the Defendant Levent Karacelik and such guarantees were, in fact, issued.

45.     On numerous occasions, the Defendant Levent Karacelik directed that funds be intermingled among the various Marvel companies as he required that the earnings and profits of various companies in the Marvel Group be sent to Marvel in Turkey so that the Defendant Levent Karacelik would have cash to use for his other Marvel Group businesses.

46.     The companies operating under the umbrella of The Marvel Group were not treated as independent profit centers.

47.     There was common office space, address and telephone numbers for several of the companies operating under the Marvel umbrella and, indeed, the Defendants the Defendants Eregli Shipping Company and Eregli Denizcilik A.S. have the same address.

48.     In May of 2007, in his capacity as Deputy President of Eregli Shipping, the Defendant Levent Karacelik caused Eregli Shipping to enter into a contract to purchase a bulk carrier vessel that was to be built by Hanjin Heavy Industries of South Korea.

49.     In July of 2008, which was 2 months after Marvel contracted to charter the Probulk vessel, the Defendant Levent Karacelik was quoted in the maritime press as saying that Marvel entered into a contractual agreement to purchase two other bulk carrier vessels from Metrostar Management Corp. of Greece (hereinafter "Metrostar") that were to be built by the Jinse Shipyard in South Korea.

50.     Marvel made a substantial initial deposit to Metrostar, in the amount of $10,000,000.00, in order to secure the contracts for the purchase of the vessels to be built by the Jinse Shipyard in South Korea.

51.     Even before the two vessels were built by the Jinse Shipyard, Marvel entered into contracts to charter these two vessels out to another Korean charterer and, in those sub-charter contracts, Marvel was identified as the owner of the vessels to be built by the Jinse Shipyard.

52.     In February of 2009, Hanjin Heavy Industries commenced the construction of the vessel that had been ordered by Eregli Shipping Company.

53.     Following Marvel's repudiation of the charter party with Probulk in February of 2009, the Defendant Levent Karacelik took purposeful actions to keep Marvel undercapitalized and judgment proof.

54.     In mid-2009, as a result of the 2008 worldwide economic crisis, the Jinse Shipyard in South Korea found itself in financial difficult, it was forced to seek court protection and the Jinse Shipyard never did build the vessels that were ordered by Marvel.

55.     A year later, in mid-2010, Marvel received a refund of its down payment for the purchase of the two vessels that were to have been built by the Jinse Shipyard of South Korea from Metrostar in the approximate amount of $10,000,0000.00.

56.     Because of Probulk's ongoing arbitration against Marvel, the potential liability of Marvel to Probulk and other claims pending against Marvel by entities such as Samsun Logix, the Metrostar refund, in the approximate amount of $10,000,0000.00, was never paid to or credited to Marvel, but it was, instead, diverted by the Defendant Levent Karacelik to other entities controlled by the Defendant Levent Karacelik.

57.     The Defendant Levent Karacelik had previously represented to certain of his companies that they would receive a portion of the Metrostar refund, even though the money had been paid by Marvel and was owed to Marvel.

58.     Upon information and belief, a significant portion of the Metrostar refund was used by the Defendant Levent Karacelik to pay for the vessel that was

built by Hanjin Heavy Industries for Eregli Shipping, which vessel was delivered to Eregli Shipping Company in May of 2011 carrying the name M.V. CAPE ISTANBUL.

59.     The M.V. CAPE ISTANBUL was chartered out to another entity when the vessel was delivered in 2011, and the M.V. CAPE ISTANBUL is still operating and gainfully employed today.

60.     When Marvel received the refund of $10,000,000.00 from Metrostar in mid-2010, Probulk was still prosecuting its claim against Marvel for repudiation of the M.V. IOANTHI charter in the London arbitration proceedings.

61.     Later, in September of 2012, while the London Arbitration was still underway and after Marvel served its defence submissions to Probulk's claims, Marvel's English counsel, Hill Dickenson LLP of London, advised Probulk's English counsel that they were no longer representing Marvel and it was, otherwise, pointless for Probulk to continue with the arbitration because Marvel had no money.

62.     Probulk, nevertheless, continued prosecuting its claim against Marvel in the London Arbitration, which ultimately resulted in a Final Arbitration Award dated January 28, 2013 in favor of Probulk and a Supplementary Arbitration Award dated March 13, 2013 in favor of Probulk.

### COUNT I

### DEFENDANTS ARE LIABLE FOR BREACH
### OF THE MARITIME CONTRACT AS THE ALTER EGO OF MARVEL

63.     Paragraphs 1 through 62 of this Complaint are repeated and realleged as if the same were set forth at length herein.

64.     As more specifically detailed by the factual allegations set forth in ¶s 1 through 62, the Defendant Levent Karacelik exercised complete domination and control over Marvel with respect to the transaction at issue, *i.e.* the repudiation of the charter party with Probulk for the hire of the M.V. IOANTHI, insofar as the there was an overlap in ownership, officers, directors and personnel for Marvel and the other companies that were operated under the umbrella of The Marvel Group, Marvel had no degree of business discretion, the dealings between Marvel and the other companies that were operated under the umbrella of The Marvel Group were not at arm's length, Marvel the other companies that were operated under the umbrella of The Marvel Group was not treated as an independent profit center. Marvel and the other companies that were operated under the umbrella of The Marvel Group were used to guarantee each other's debts and the Defendant Levent Karacelik caused funds to be intermingled between Marvel and his other companies that were operated under the umbrella of The Marvel Group for the purpose of keeping certain companies undercapitalized and judgment proof.

65.     As more specifically detailed by the factual allegations set forth in ¶s 49 through 62, the Defendant Levent Karacelik committed a fraud or a wrong against the Plaintiff Probulk and the Defendants Eregli Shipping Company and Eregli Denizcilik A.S. were used to commit a fraud or a wrong against the Plaintiff Probulk insofar as the Defendant Levent Karacelik diverted funds from Marvel, and stripped the company of its assets, while Probulk was pursuing its claim for repudiation of the M.V.  IOANTHI charter party, in order to make Marvel judgment proof and such funds and/or assets were diverted to other entities, including Eregli Shipping

Company and Eregli Denizcelik A.S., so that the Defendant Levent Karacelik could continue to profit from the operation of the M.V. CAPE ISTANBUL.

66.    By reason of the premises, the Plaintiff Probulk prays that the Court will pierce the corporate veils between Marvel and Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S. such that Marvel be deemed the alter ego of the Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S. and the Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S.  be held liable, collectively and individually, to satisfy the Judgment rendered against Marvel by this Court on April 12, 2016 for the amount of $12,795,09365, plus interest and costs.


**WHEREFORE**, THE PLAINTIFF PROBULK PRAYS THAT:

A.  That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint herein, failing which a default judgment may be entered against the Defendants;

B.  That the Court pierce the corporate veils between Marvel and Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S. such that Marvel be deemed the alter ego of the Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S.;

C.  That the Court holds the Defendants Levent Karacelik, Eregli Shipping Company and Eregli Denizcilik A.S. liable, collectively and individually, to

satisfy the Judgment rendered against Marvel by this Court on April 12, 2016

for the amount of $12,795,093.65, plus interest and costs.

D.  That Plaintiff Golden Horn may have such other, further and different relief

as may determined by the Court to be just and proper in the circumstances.


Dated:          January 4, 2017
                New York, New York


                                    The Law Office of Owen F. Duffy,
                                    *Attorneys for the Plaintiff*
                                    *Probulk Carriers Limited*

                        By:         _____
                                    Owen F. Duffy
                                    5 Penn Plaza, 19th Floor
                                    New York, New York 10001
                                    Tel: (516) 721-8793
                                    Fax: (212) 235-7022
                                    Email: Owen@ODuffy-Law.com

15